## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DARA HEM,**

      **Plaintiff,**

**vs.**                                **Civil No. 09-888 MCA/RLP**

**TOYOTA MOTOR**
**CORPORATION, et al.,**

      **Defendant.**

## MEMORANDUM OPINION and ORDER
## GRANTING IN PART and  DENYING IN PART
## PLAINTIFF'S MOTION FOR
## ADDITIONAL RULE 30(b)(6) DEPOSITIONS

The matter before the court is the Motion of Plaintiff, Dara Hem (Plaintiff herein), to Compel

Depositions of Fed. R. Civ. P. 30(b)(6) Representatives. (Docket No. 131).  The motion is granted

in part and denied in part.

**I.**      **Law on Rule 30(b)(6) Depositions**

Rule 30(b)(6) provides in part:

> In its notice or subpoena, a party may name as the deponent a public or private
> corporation . . . and must describe with reasonable particularity the matters for
> examination.  The named organization must then designate one or more officers,
> directors or managing agents, or designate other persons who consent to testify on
> its behalf, and it may set out the matters on which each person designated will
> testify. . . .   The persons designated shall testify about information known or
> reasonably available to the organization. . . .

"With regard to choosing a deponent to speak on behalf of the corporation, companies have

a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule

30(b)(6) depositions and to prepare them fully to unevasively answer questions about the designated

subject matter."  Sprint Communications v. Theglobe.com. Inc., 236 F.R.D. 524, 527 (D. Kan.

2006).  This duty does not require personal knowledge of the subject matter, but rather " 'implicitly

requires persons to review all matters known or reasonably available to [the corporation] in preparation for the 30(b)(6) deposition.' "Id. At 528. Thus, "to avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice." Steil v. Humana Kansas City, Inc., 197 F.R.D. 442, 444 (D. Kan. 2000). To this end, "[t]he court may find lack of preparation [of a 30(b)(6) designated deponent] to be a failure to appear" and can sanction the entity the deponent represents. Starlight Int'l v. Herlihy, 186 F.R.D. 626, 639 (D. Kan. 1999).

This court has wide discretion to supervise discovery. Qwest Communications Intern., Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003).

## II.    Background

Plaintiff served Defendant Toyota Motor Corporation (Toyota herein) with three notices of deposition, seeking testimony from Toyota representatives on a variety of topics. Toyota produced six witnesses pursuant to Rule 30(b)(6). This motion pertains to the testimony offered by four of the witnesses[1]:

Motoki Shibata, deposed on June 5, 2008, was Toyota's designated representative on the issues of (1) design and development of the 2000 Tundra SR/5, (2) design, development and testing of its roof and roof components, and (3) design, development and testing work regarding the occupant protection systems of the Tundra SR/5, including alternatives considered, adopted, rejected and evaluations performed. (Docket No. 131, 1[2]; Ex. 6, depo. pp. 7-9).

---

[1]In addition to these four witnesses, Toyota also produced Mr. Takashi Shirasu and Andrew Coetzee. Toyota represents, and Plaintiff does not dispute, that Mr. Shirasu testified with regard to the handling and stability characteristics of the vehicle at issue and Mr. Coetzee testified on product planning issues. (Docket No. 132, p. 4). There is no dispute presented with regard to the deposition testimony of Mr. Shirasu or Mr. Coetzee.

[2]Relevant portions of the deposition notice read: (the representative shall offer testimony with regard to the following areas of inquiry with respect to the 2000 Toyota Tundra/SR5): 1) The planning phase of the design and development process including program planning . . . and early planning to the future design and

2

Ernest Bastien, deposed September 16, 2008, was Toyota's designated representative on marketing and demographics for the Toyota Tundra.  (Docket No. 131, Ex. 5,  p 8).

Takayuki Kanaya, deposed December 11, 2008, was Toyota's designated representative on "towing issues" related to the 2000 Tundra SR/5.[3]

Akira Nagae, deposed December 11, 2008, was Toyota's designated representative on issues related to vehicle stability control ("VSC").[4]

## III.    Dispute

Plaintiff contends these four witnesses were unprepared for their depositions, and therefor unable to testify as to Toyota's full corporate knowledge.  Plaintiff cites to various portions of the testimony of each witness to support this contention.    I will discuss each witness in turn.

### A.    Motoki Shibata

Motoki Shibata has been employed by Toyota since 1983.  From 1992-2002 he was involved

---

development of the vehicle; . . . 3) The design, development, and testing of the roof and roof components, including materials used; component evaluations and studies; and overall roof performance testing and analysis, 4) Design, development and testing work regarding the occupant protection systems provided for the vehicle, including what alternatives were considered; adopted, rejected and what evaluations were performed.

[3]The deposition notice reads: The witness should be prepared to discuss the corporation's knowledge about the towing capability of the Tundra, including design, development, testing, and creation of the vehicle's towing capability and performance. Particular emphasis will be placed on the company's goals, discussions, design considerations, standards used, development of the  vehicle, testing of the vehicle, and all information it considered when providing consumers with recommendations about towing performance of the Tundra, including claims or lawsuits related to towing

[4]The notice of deposition reads: The witness should be prepared to discuss the corporation's knowledge about the creation, development, testing, and incorporation of the technology into production level vehicles prior to the 2000 model year as well as the technology that was used and incorporated into the Tundra. Particular emphasis will be placed on the company's development and knowledge of the technology and the decision-making process about what vehicles received the technology during what time-frames, how those decisions were made, why, who was involve, when and what information the corporation knew and considered when making those decisions  including claims or lawsuits involving claims that Toyota was negligent in failing to incorporate ESC or VSC into a particular model of Toyota vehicle.

in the crash safety performance of Toyota and Lexus vehicles.   His job was to evaluate the crash

safety performance of Toyota vehicles through various tests.   As of January 1998, he became

directly involved in the design of the roof of the 2000 model Toyota Tundra SR/5.  (Docket 131, Ex.

F, depo. pp. 10-15).

Although Mr. Shibata was designated to testify on a variety of issues, Plaintiff only

complains about his testimony regarding roof issues.  Accordingly, the court finds that there was no

ascertainable lack of preparedness as to the other areas of testimony for which he was offered,

design and development of the 2000 Tundra and its occupant protection system .

Mr. Shibata's testimony can be summarized as follows:

In preparation for this deposition, Mr. Shibata reviewed test reports related
to the roof: 208 test reports, 216 test reports, and dolly roll over test reports, and roof
structure drawings. (Id., depo. p. 23).[5]

Planning for the Tundra started in 1995, and vehicle tests and evaluations
started in 1996.  (Id., depo. pp. 17, 19).  The first Tundra left the factory to be sold
in February 1999.  (Id., depo. p. 17).

Based on dates on  design drawing, the roof was first designed in early 1997.
(Id., depo. p. 26).  Vehicle prototypes were made and subjected to final compliance
tests  in 1997. (Id. depo. p. 19).  Roof strength tests were conducted prior to January
1998, and Mr.  Shibata confirmed roof strength and roof structure when he became
directly involved in January of 1998.  (Id., depo. p. 21.)  There were no changes in
the design of the roof after January of 1998 that would affect roof strength.  (Id.
depo. p. 12).  No 216 tests or dolly roll over tests  were performed after January
1998.  (Id., depo. pp. 22-23). After 1998, vehicle head on collision tests, which
evaluated roof strength, were conducted.  (Id., depo.  p. 11).

Computer assisted design (CAD herein) data was used to do calculations in
the 1996-1997 time frame.  Mr. Shibata did not look for or review CAD data in
preparation for the deposition.  (Id. depo. pp. 50-51).  These calculations were
discarded in approximately 1999 in the ordinary course of Toyota's business, once
development work had been completed.  (Id., depo. pp. 50-52, 54).  He did not ask

---

[5]Mr. Shibata also discussed color photographs, apparently of the roof structure.  (Docket 131, Ex.
6, depo. p. 31-33).

anyone about this retention policy, as that is just how it is done. (Id., depo. p. 51). If any such reports still existed, they would be with Toyota's custodian of documents. (Id., depo. p. 51). Toyota does retain test reports, Toyota standards, drawings and design change order documents that reflect final performance of the vehicle. (Id., depo. p. 53).

Toyota was not aware of the existence of boron steel in 1996-1997, and to his knowledge has never used boron steel in its vehicles. (Id., depo. pp. 28, 31, 38-39).

To his knowledge, Toyota was not aware of the use of structural foam to increase strength in structural members as early as the 1980s, but perhaps other departments such as design or material development might have known. (Id., depo. pp. 40-41). To his knowledge, Toyota has never used any form of high density foam as a means of reinforcing structural components of automobiles. Id.

Plaintiff contends that Mr. Shibata was unprepared to testify with regard to changes in roof design from prototype to finished product, availability or non-availability of boron steel, use of high density foam in roof structures in the 1990's, the identity of the actual designers and evaluators of the roof structure, and existence and possible location of computer generated reports on the roof structure.

As to the use of boron steel or high density foam the notice of deposition did not include these topics, and Mr. Shibata clearly testified that they were not considered or used in connection with the Tundra.

With regard to the identity of the actual designers and evaluator of the roof structure, the deposition notice did not include this topic. This information can be obtained by Plaintiff, to the extent it is available, through interrogatories.

With regard to changes in the roof structure, Mr. Shibata testified final compliance tests were performed in 1997, and no structural changes affecting roof strength were made after 1998. In addition, Mr. Shibata testified at length about the standards applicable to the 216 roof strength test performed on the Tundra, although he was not asked a single question concerning the results of that

test.

With regard to the existence and possible location of CAD drawings, Mr. Shibata testified that they had been discarded in the ordinary course of Toyotas business.  After questioning that might border on badgering, he identified where such drawing  might be if they existed.

**IT IS HEREBY ORDERED** that Plaintiff may serve a Request for Production on Toyota, seeking such drawings.  If they exist, the court will at that point entertain a renewed motion to depose a Rule 30(b)(6) representative of Toyota to discuss those drawings.

### B.      Ernest Bastien

Ernest Bastien is currently vice-president, Retail and Market Development for Toyota Motor Sales.  (Docket 131, Ex. E, depo. p.10).  From 1999 through June 2007 he was vice-president of Vehicle Operations Group. (Id., depo. pp. 11-13).  He was designated as Toyota's representative to provide testimony on marketing of the Tundra and demographic studies relating to the Tundra.  (Id., depo. p. 8-9).   He testified at length on these topics.  One of the items Mr. Bastien reviewed in preparation for his deposition was the 2000 Tundra owner's manual.  (Id., depo pp. 73-74).

Plaintiff cites to two responses by Mr. Bastien in support of his position that he was not adequately prepared for his deposition.  First, his statement that the content of the owner's manual was "boilerplate" and written in Japan.  (Id., depo. p. 74).  Second that there might be additional information on towing beyond what is in the owner's manual.  (Id., depo. pp. 81-83).

With regard to the authorship of the owner's manual, the court can not see how Mr. Bastien's response indicates lack of preparedness on the issues of marketing and demographics.

With regard information on towing not contained in the owner's manual, Mr. Bastien was asked about the following statement in the owner's manual:  "For your safety and the safety of others, you must not overload your vehicle or trailer.  Ask your local Toyota dealer for further

6

details before towing." (Id., depo. p. 80). Mr. Bastien stated that this statement was intended to educate the consumer about horsepower and torque, and also indicated that subsequent training offered to dealerships that "was more elaborate in terms of what conditions you should tow in, what the weight should be, and what loads you should expect to carry." (Id., depo. p. 82). Mr. Bastien was "confident" that the training materials provided to dealerships on towing was not produced at the deposition, and that he had not reviewed it in preparation for the deposition. (Id., pp. 82-83).

I find that materials provided to dealerships, to enable customer education, is related to marketing.

**IT IS HEREBY ORDERED** that Toyota shall produce all such information made available to dealerships on or before April 9, 2005. This production shall be made on or before **February 19, 2010**. Thereafter, the court will entertain a renewed motion to depose a Rule 30(b)(6) representative of Toyota to discuss that information.

### C.    Takayuki Kanaya

Tanayuki Kanaya was designated as Toyota's representative to provide testimony on towing issues. (Docket 131, Ex. D, depo. pp. 7-8). His resumé was appended to the deposition (Id. depo. p. 5), but was not provided to the court.

Mr. Kanaya identified three engineering reports, three engineering standards and portions of the 2000 Tundra owner's manual as materials he had reviewed in preparation for the deposition. (Id., depo. pp. 9-15). He also testified that other reports related to towing existed, but he had not reviewed them. (Id., depo. p. 15-16).

Rule 30(b)(6) required Toyota to provide a witness who had reviewed all matters known or reasonably available to Toyota in preparation for a deposition on towing issues. Clearly, review of all reports related to towing was required. Toyota's rather anemic response is that "Toyota test

7

reports relevant to towing issues likely had been previously produced by Toyota, but Plaintiff's counsel did not question Mr. Kanaya about any of those previously-produced reports." (Docket 132, p. 8). That is beside the point. The onus was on Toyota to provide an adequately prepared witness, not on Plaintiff to educate the witness at the time of the deposition.

I find that based on the record before me, Toyota did not provide a witness adequately prepared to give an Rule 30(b)(6) deposition on the issues of towing.

**IT IS HEREBY ORDERED** that on or before **February 19, 2010** Toyota shall separately produce to Plaintiff all reports and engineering studies related to the towing capability of the 2000 Tundra SR/5, as is more particularly described in Plaintiff's 30(b)(6) deposition notice. Thereafter, Toyota shall produce for deposition a witness pursuant to F.R.Civ.P. 30(b)(6) to testify on towing issues at a date mutually agreeable to the parties, consistent with the discovery deadlines previously set by the court.

### D.   Akira Nagae

Akira Nagae was designated by Toyota to testify regarding Toyota's knowledge of the creation, development, testing and incorporation of Vehicle Stability Control (VSC) technology as it related to the 2000 Tundra model year and prior production level vehicles. (See footnote 4, supra, for the complete text of the relevant notice of deposition.). (Docket 131, Ex. G, depo. p. 6). Mr. Nagae is an engineer who was involved in the development of the VSC as part of his work experience with Toyota. (Id., depo. p. 9-10, 39-40). At the deposition, counsel for Toyota represented that they had filed objections to the deposition notice, based on it being overly broad (Id., depo. p. 8). No Motion for Protective Order was filed.

The wording of the deposition notice identifies the time frame for which the witness is to provide testimony as 2000 and before, and Mr. Nagae clearly stated his understanding that he had

been designated to address VSC issues for that time frame.  (Id., depo. p. 7-8).  Mr. Nagae provided detailed and specific responses to substantive questions which were posed to him concerning Toyota's VSC technology.   (See, e.g., Id., depo. pp. 11-16, 23-26,

Plaintiff contends that Mr. Nagae's lack of preparedness prevented him from identifying the specific individuals who worked on Toyota's development of the VSC, and how the idea of the VSC came up; the identity of the individuals or departments that selected the first Toyota vehicle to be equipped with VSC; the identity of the individuals who created the sensor algorithms for Toyota's VSC; when the test specifications/standards for the vehicle/system were formulated and by whom; the identity of the individuals who decided to include vehicle control on the 2003 Tundra, and what technical issues were addressed in deciding to include VSC on the Tundra[6].

With regard to the identities of specific individuals at Toyota, I find that such questions are more properly and expeditiously asked through interrogatories.  Accordingly, Plaintiff may submit interrogatories to Toyota to obtain this information.

With regard to questions regarding inclusion of VSC in the 2003 Tundra and technical issues addressed by Toyota after 2000 regarding VSC, the court finds that these questions go beyond the scope of questioning described in the Notice of Deposition.

With regard to how the idea of VSC came up, I find that Mr. Nagae adequately answered that question.  (Id., depo. pp. 13-15).

With regard to what department at Toyota determined what vehicle would first be equipped with VSC, I find that Mr. Nagae's response, identifying the Product Planning Department (Id., depo.

---

[6]In reviewing the deposition transcript, I note questions related to including VSC in the Tundra relate to discussions held and decisions made after 2000 (Docket 131, Ex. G, depo. pp. 35-37), and therefore beyond the scope of the deposition notice.

pp. 23-24) is adequate, and that if further information is needed, Plaintiff may pose a specific interrogatory to Toyota.

With regard to when test specifications/standards for the Toyota VSC were formulated, I find that Mr. Nagae adequately answered that question.  (Id., depo. pp. 34-35).

Finally, Plaintiff contends that Mr. Nagae was unprepared for his deposition because he had not reviewed scientific articles published by Toyota regarding its VSC system.  (See, id., depo. p. 16-17).  Mr. Nagae offered to review those published articles at the deposition  (Id., depo. pp. 17-18).

I find that Plaintiff is entitled to depose a witness pursuant to F.R.Civ.P. 30(b)(6) on the content of scientific articles published by Toyota regarding its VSC system.

**IT IS HEREBY ORDERED** that on or before **February 26, 2010** Toyota shall produce for deposition a witness pursuant to F.R.Civ.P. 30(b)(6) to testify on  on the content of scientific articles published by Toyota regarding its VSC system.

**IT IS SO ORDERED.**

_____
Richard L. Puglisi
Chief United States Magistrate Judge