IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DARA HEM**,

    Plaintiff,

vs.                                                                                      Civ. 09-888 MCA

**TOYOTA MOTOR CORP.**,
et al.,

    Defendants.

and

**THE REGENTS OF THE UNIVERSITY
OF NEW MEXICO, on behalf of its public operation,
THE UNIVERSITY OF NEW MEXICO/BERNALILLO
COUNTY MEDICAL CENTER**,

    Claimant,

vs.

**TURNER AND ASSOCIATES, P.A.**,

    Claimant.

## MEMORANDUM OPINION AND ORDER

    This case is before the Court upon the parties' cross-motions for summary judgment. [Docs. Nos. 299, 300]   The Court has considered the written submissions of the parties, the record in this case and the applicable law, and is otherwise fully advised.

**Summary Judgment Standards**

    Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. " As our Court of Appeals has succinctly stated:

> Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)."The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**Undisputed Facts**

The following facts and procedural events are taken as undisputed for purposes of the present motions. Dara Hem was seriously injured on April 9, 2005, in a motor vehicle accident. He was transported to UNMH for treatment of the injuries he received in the accident. In March 2007, Dara Hem brought suit in the United States District Court for the Eastern District of Texas, Marshall Division, against various defendants, seeking damages for the injuries he sustained in the April 2005 accident. On May 3, 2007, UNMH recorded a Notice of Hospital Lien in the amount of $237,652.68. [Doc. 299 at 23-24; Doc. 301-2]Clay Miller, one of the attorneys representing Dara Hem in the Texas litigation, sent a letter dated December 19, 2008, to Janie Ortega, a UNMH employee, offering $40,000 as "full and final satisfaction" of UNMH's $237.652.68 lien. [Doc. 299 at 27; Doc. 301-3] In his letter, Mr. Miller did not dispute the amount of UNMH's lien or the

underlying charges. In a letter dated February 3, 2009, UNMH's counsel responded to Mr. Miller's December 19, 2008 letter. [Doc. 299 at 30; Doc. 301-4]   UNMH's counsel advised Mr. Miller that although UNMH would not accept $40,000 as full and final satisfaction, UNMH would accept $166,356.88. In a letter dated May 22, 2009 addressed to UNMH employee Wanda Jarmillo [sic], Mr. Miller summarized the terms of the settlement agreement between UNMH and Dara Hem and his attorneys:

> As you know, UNMH has agreed to accept the sum of $166,356.88 as full and final satisfaction of [UNMH's lien]. This letter will further confirm that $50,000 will be paid out of the pending settlement with U-Haul and that the balance of the lien $116,356.58, will be paid out of the anticipated settlement of Mr. Hem's claims against Toyota.
>
> Please sign below to acknowledge your confirmation of this agreement to defer payment of the balance of the lien as forth above. Upon receipt of your signature, a check for $50,000 will be promptly tendered.

[Doc. 299 at 34; Doc. 301-5] UNMH received the initial $50,000 payment. On July 2, 2009, UNMH filed a first addendum to its Notice of Hospital Lien, reducing the amount of the lien by $50,000 to $116,356.58.

In September 2009, the Texas court transferred the Hem litigation to this Court.   The Court tried the issue of liability before a jury in January 2011.   While the jury was deliberating and before it returned its verdict, Dara Hem and Toyota entered into a "Contingent Confidential Settlement Agreement." [Doc. 269-1] The Contingent Confidential Settlement Agreement was not presented to the Court and the Court was not otherwise advised of its existence or its terms.   The jury returned a special verdict finding that the Toyota Defendants were not liable for Dara Hem's injuries. On February 2, 2011, the Court entered a final judgment, ordering that Plaintiffs recover nothing and that the action be dismissed.

3

On February 4, 2011, UNM filed a second addendum to its Notice of Lien, increasing the amount of the lien by $9,776.00, bringing the total amount of the lien to $126,132.58. On March 14, 2011, Mr. Miller wrote UNMH, advising UNMH that "[w]ith regard to the [Hem hospital] lien, please find enclosed a copy of the Final Judgment, reflecting a jury verdict in favor of Defendants and against Plaintiff, Dara Hem.  Unfortunately, Dara Hem shall recover nothing from the Defendants, and the lawsuit has been dismissed." Mr. Miller did not mention the Contingent and Confidential Settlement Agreement.

Pursuant to the Contingent and Confidential Settlement Agreement, Toyota was to pay Dara Hem $300,000 in exchange for a release of all claims owned by Dara Hem or his wife, Savy Hem. The Contingent and Confidential Settlement Agreement required Dara Hem to "resolve and account for any and all valid medical liens, hospital liens . . . related to Plaintiff's injuries and any medical care for any injuries claimed by Plaintiff in this matter." On April 7, 2011, Toyota's attorney contacted UNMH to confirm that UNMH's lien had been satisfied.[1]   During this conversation, UNMH learned of the Contingent and Confidential Settlement Agreement. UNMH informed Toyota's attorney that its lien had not been satisfied. [Doc. 299 at 21; Doc. 301 at 4 (Plaintiffs [sic] Response to UNMH's Statement of Undisputed Facts)]

On June 2, 2011, Dara Hem's counsel, Turner and Associates and Williams Reist, P.C. filed a "Motion for Relief from Judgment and to Enforce Agreement."   Plaintiff's counsel filed the motion with a designation that it be available only to case participants. The motion sought, *inter alia*, to enforce the Contingent Confidential Settlement Agreement.   Plaintiff's counsel attached a

---

[1]Toyota's attorneys no doubt were concerned with the possibility that Toyota could incur liability pursuant to NMSA 1978, § 48-8-3 if Toyota released the settlement funds prior to the satisfaction of UNMH's lien.

4

copy of the Contingent Confidential Settlement Agreement as an exhibit to their motion. The Toyota Defendants filed a response in which they argued that Dara Hem and his counsel had not resolved UNMH's lien and that the Toyota Defendants' duty to pay the $300,000 settlement amount specified in the Contingent Confidential Settlement Agreement was conditioned upon prior satisfaction of UNMH's hospital lien. [Doc. 272 at 2]

On June 24, 2011, the Court held a hearing on the motion to enforce.  At that hearing, counsel for UNMH appeared, explaining to the Court that UNMH had entered into a compromise with Dara Hem and his counsel pursuant to which UNMH had received $50,000, leaving an outstanding balance of $116,356.58. Counsel for UNMH later corrected herself, stating that the balance of the lien had been increased by an addendum to $126,132.58.  During the hearing, the Court and the parties settled upon an interpleader proceeding as the appropriate method of resolving the question of who had priority in the distribution of $126.132.58 of settlement funds payable under the Confidential and Contingent Settlement Agreement.  On July 7, 2011, the Toyota Defendants filed a Motion in Interpleader. On July 11, 2011, the Court entered an order allowing the Toyota Defendants to pay into the registry of the Court the sum of $126,132.58.  On August 3, 2011, the Court entered an Order granting the Toyota Defendants' motion in interpleader, discharging the Toyota Defendants from this lawsuit, and relieving them of further claims with respect to the interpleaded fund.  Through subsequent responses the instant interpleader proceeding has reduced to a dispute between UNMH and Dara Hem's former attorneys, Turner and Associates, P.A. (hereafter "Attorneys").

**Discussion**

There are three dispositive questions before the Court: (1) whether the Contingent

Confidential Settlement Agreement constitutes the "anticipated settlement of Mr. Hem's claims against Toyota" referred to in the 2009 Settlement Agreement; (2) whether New Mexico Constitution Article IV, § 32 precludes enforcement of the 2009 Settlement Agreement; and (3) whether NMSA 1978, § 48-8-7 prohibits Attorneys' agreement to subordinate their statutory right of priority to UNMH's lien.

As to the first question, the controlling principles of law are set out in the New Mexico Court of Appeals' opinion in *Farmington Police Officers Association v. City of Farmington*, 139 N.M. 750 (Ct. App. 2006).   "[W]here the meaning of a material contract term is in dispute a party seeking affirmative relief based upon its interpretation necessarily bears the burden of establishing that its interpretation controls."  *Id.* at 756.   The New Mexico Court of Appeals has adopted Section 201 of the Restatement (Second) of the Law of Contracts (1981) for purposes of deciding whose meaning controls in a dispute over the meaning of a contract term.  *Id.* at   757.   Where the parties have conflicting subjective understandings of a term, New Mexico courts resort to the objective theory of contractual assent as codified in Restatement § 201(b):

> Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by ["A"] if at the time the agreement was   made
> . . . .
> ["A"] had no reason to know of any different meaning attached by ["B"], and ["B"] had reason to know the meaning attached by ["A"]

In the Court's view, nothing in the phrase "out of the anticipated settlement of Mr. Hem's claims against Toyota" would have clearly conveyed to a reasonable reader in UNMH's position Attorneys' intention to restrict the term "anticipated settlement" to a settlement reached in a particular time frame.   The accepted definitions of anticipate–"to consider in advance" or "look

6

forward to as certain," *Webster's Third New International Dictionary* 94 (Philip Babcock Gove, ed.-in-chief, 1993)–are entirely consistent with treating the Contingent Confidential Settlement Agreement as "the anticipated settlement of Mr. Hem's claims against Toyota."  The Court concludes that given the normal meaning of "anticipated" there are no genuine disputes that (1) UNMH had no reason to know of Attorneys' subjective intention to limit "the anticipated settlement of Mr. Hem's claims against Toyota" to a settlement reached within a particular time frame and (2) Attorneys had reason to know that the term "anticipated settlement" would be understood by UNMH as extending to any future settlement between Dara Hem and Toyota in which a release of Dara Hem's claims provides the consideration for the payment of settlement funds by Toyota. Under these circumstances, Attorneys' subjective, but unexpressed, intention to limit the scope of the term "anticipated settlement" is immaterial. *Pope v. The Gap, Inc.*, 125 N.M. 376, 380 (Ct. App. 1998).   The Court has examined the Contingent Confidential Settlement Agreement.   There can be no dispute that it constitutes a settlement of Dara Hem's claims against the Toyota Defendants as it is Dara and Savy Hems' release of claims against Toyota that provides the consideration for Toyota's payment of $300,000.   The Contingent Confidential Settlement Agreement constitutes an "anticipated settlement" with Toyota.

      The second issue is whether the 2009 Settlement Agreement is enforceable under New Mexico law.   This case is before the Court following remand by the New Mexico Supreme Court in *Hem v. Toyota Motor Corporation*, 353 P.3d 1219 (2015). There is no question that under New Mexico law as announced in *Hem*, the 2009 Settlement Agreement is enforceable.   *Hem*, 353 P.3d at 1226.   However, Attorneys argue that because *Hem* overruled *Gutierrez v. Gutierrez*, 99 N.M. 333 (1983), *Gutierrez*'s gloss on Article IV, § 32 was the controlling statement of the law in 2009.

Therefore, according to Attorneys, it was *Gutierrez*'s gloss on Article IV, § 32 that would have been incorporated into the parties' agreement under the principle that a contract incorporates the law existing "*at the time of its creation.*" *Townsend v. State ex rel. State Highway Dep't*, 117 N.M. 302, 304 (1994) (emphasis added). This argument is undercut by the fact that *State v. State Investment Company*, 30 N.M. 491 (1925), was also part of New Mexico law in 2009. In *State Investment*, the New Mexico Supreme Court had held that the first clause of Article IV, § 32 was strictly a limitation on the Legislature and was not a limitation on the State in general. Accordingly, *State Investment* upheld against an Article IV, § 32 challenge judgments entered on stipulations by the district attorney and special counsel for the state tax commission compromising the defendants' tax liability. As of 2009, New Mexico law included *State Investment*, under which the 2009 Settlement Agreement is fully enforceable. Inexplicably, *Gutierrez* did not mention *State Investment*, which remains good law to this day. Thus, under the principle that a contract incorporates the law existing "at the time of its creation" *both State Investment*'s holding and *Gutierrez*'s dicta[2] were incorporated into the 2009 Settlement Agreement, setting up the conflict that the New Mexico Supreme Court ultimately resolved in UNMH's favor in *Hem*. Attorneys' argument is based on an improperly selective reading of New Mexico law as it existed in 2009.

Furthermore, assuming *arguendo* that *Gutierrez* was the controlling authority, the 2009 Settlement Agreement would still be enforceable. *Gutierrez*'s dicta imported the "pre-existing duty" rule into Article IV, § 32. Under the pre-existing duty rule, an agreement by a creditor to

---

[2]According to the New Mexico Supreme Court, *Gutierrez*'s holdings "exceeded the scope of the dispute before the Court." *Hem*, 353 P.3d at 1223-24. A court "stray[s] into dicta by addressing an issue that was not squarely before [it], was not challenged by the parties, and was not necessary for decision in the case." *State v. Sims*, 148 N.M. 330, 336-37 (2010).

allow a debtor to discharge a debt by paying less than the agreed upon amount is not supported by consideration.   John Edward Murray, Jr., *Murray on Contracts* § 64 B.1 (3d. ed. 1990). As *Gutierrez* recognized, the general rule is subject to an exception where there exists a bona fide dispute as to the amount actually owed.  In such a case, the debtor's relinquishment of the right to an adjudication of the amount owed can provide the requisite additional consideration for the creditor's compromise. *Id.* at B.2   A patient's relinquishment of a good-faith defense to payment of the full amount claimed by a medical provider is one example of this exception. However, the Court does not read *Gutierrez* as necessarily holding that a patient-debtor's relinquishment of a good-faith defense to payment of the full amount is the *sole* form of consideration sufficient to except a compromise by a governmental entity from the pre-existing duty rule. *Gutierrez* stands for the proposition that a compromise must be supported by consideration,[3] one obvious example of which is the debtor's agreement to relinquish its right to an adjudication of a bona fide dispute over the amount of the debt.

The New Mexico Hospital Lien Act, §§ 48-8-1, *et seq.*, provides that the hospital lien attaches "to that part of the judgment, settlement or compromise going or belonging to such patient, *less the amount paid for attorneys' fees, costs and expenses incurred in obtaining the judgment, settlement or compromise*," § 48-8-1(A) (emphasis added).   Section § 48-8-1(A) gives attorneys' fees, costs and expenses incurred in obtaining a judgment, settlement or compromise priority over a hospital lien. This priority can seriously disadvantage a hospital in those cases where the patient's recovery is not sufficient to cover both attorneys' fees, costs, and expenses and

---

[3] The *Gutierrez* Court may have been concerned that the absence of consideration for a compromise was suggestive of collusion. *See Hem*, 353 P.3d at 1225.

the patient's medical bills.  As Attorneys themselves have acknowledged in papers filed with this Court, the initial $50,000 payment was available "only because my firm and Mr. Turners [sic] attorneys deferred collection of our full fees and costs[.]" [Doc. 300-1 at 2] The Court concludes that even if *Gutierrez* rather than *State Investment* was the controlling authority, Attorneys' subordination of their statutory priority pursuant to the 2009 Settlement Agreement would have constituted valuable consideration for UNMH's compromise, given the substantial risk apparent to the parties at the time that the amounts ultimately recovered by Dara Hem from the U-Haul and Toyota defendants might not be sufficient to satisfy both Attorneys' claims for attorneys' fees, costs, and expenses and Dara Hem's indebtedness to UNMH.  Accordingly, the additional consideration provided by Attorneys' agreement to subordinate their statutory right of priority in $50,000 of the proceeds of the U-Haul settlement and $116,356.88 of the proceeds of the Toyota settlement would have been sufficient to validate the 2009 Settlement Agreement under *Gutierrez*.

Attorneys argue that the 2009 Settlement Agreement is prohibited pursuant by NMSA 1978, § 48-8-7, which provides: "Nothing in this act shall be construed to permit any hospital to be a party to or to have any interest in the amount or manner of any settlement of any claim on which a lien has been filed other than the lien rights as provided in this act." This section is not a model of the draftsman's art. Parsing the section, the Court understands this section to set out two qualifications on a hospital's statutory rights:

> (1) Nothing in this act shall be construed to permit any hospital to be a party to any settlement of any claim on which a lien has been filed; and
> 
> (2) Nothing in this act shall be construed to permit any hospital to have any interest in the amount or manner of any settlement of any claim on which a lien has been filed, other than the lien rights as provided in this act.

10

The first qualification clearly is not applicable because UNMH is not a party to the Contingent Confidential Settlement Agreement. The application of the second qualification presents an unresolved question of New Mexico law. The Court has not found a case construing § 48-8-7.

In contrast to Attorneys, the Court does not read § 48-8-7 as expressly prohibiting the 2009 Settlement Agreement. A statement that "this act does not *permit* x" is not the same as "this act *prohibits* x." The first alternative, which is analogous to § 48-8-7, leaves open the possibility that some other source of law (*e.g.*, another legislative act or the common law) can permit "x." Section 48-8-7 does not say "any hospital, having filed a lien against a settlement, is *prohibited* from claiming any interest in the amount or manner of said settlement other than the lien rights as provided in this act," and more particularly, § 48-8-7 does not say "any agreement varying the priorities established by § 41-8-1(A) as to proceeds from the settlement of a claim upon which a lien has been filed shall be unenforceable." Section 48-8-7 merely states that "*this* act" (emphasis added) does not permit a hospital to claim an interest in a settlement other than that provided by § 48-8-1(A).

Here, one obvious source of authority for the 2009 Settlement Agreement apart from the Hospital Lien Act is the common law of contracts. "New Mexico . . . has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals." *United Wholesale Co. v. Brown-Forman Distillers Corp.*, 108 N.M. 467, 471 (1989). "The voluntary relinquishment of a statutory protection is consistent with [New Mexico's] policy favoring the right to contract." *Id.* The Court does not discern in the language of

11

§ 48-8-7 a clear legislative intent to displace freedom of contract in the context of hospital liens. The 2009 Settlement Agreement was negotiated at arm's length with all parties represented by counsel.  Attorneys, whose "statutory protection" is at issue, were involved in the negotiation of the 2009 Settlement Agreement and were fully aware of its terms.   Significantly, there is not a hint of overreaching on the part of UNMH in the course of negotiation of the 2009 Settlement Agreement or its terms.   Enforcement of the 2009 Agreement will insure that UNMH receives partial payment for the medical services it provided to Dara Hem, thereby reducing the burden on UNMH of providing care to indigent patients. Given these circumstances, and New Mexico's strong policy favoring freedom of contract, Attorneys have failed to demonstrate that enforcement of the 2009 Agreement by which Attorneys waived their statutory preference to the extent of $166,356.88 expressly violates § 48-8-7 or otherwise "clearly contravenes" the public policy of New Mexico.

One final point, Attorneys argue that UNMH breached the 2009 Settlement Agreement by filing its February 4, 2011 addendum.   The Court views UNMH's filing merely as a protective measure against a breach or some other failure of the 2009 Settlement Agreement.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* [Doc. 299] of Claimant the Regents of the University of New Mexico upon behalf of its public operation, the University of New Mexico/Bernalillo County Medical Center **is granted** as to Count I of its Amended Cross-claim, and that Claimant the Regents of the University of New Mexico upon behalf of its public operation, the University of New Mexico/Bernalillo County Medical Center

**shall recover** from the funds in the Court's registry the sum of **$116,356.58** on their Amended Cross-Claim [Doc. 285].

**IT IS FURTHER ORDERED** that Claimant Turner and Associates, P.A.'s *Motion for Summary Judgment* [Doc. 300] is **denied**.

**IT IS FURTHER ORDERED** that pursuant to the 2009 Settlement Agreement, the underlying debt, UNMH acct. number 150724144, owed by Plaintiff Dara Hem to Claimant the Regents of the University of New Mexico on behalf of its public operation, the University of New Mexico/Bernalillo County Medical Center is adjudged **satisfied and extinguished**.

**IT IS FURTHER ORDERED** upon payment from the Court's registry of $116,356.58, Claimant UNMH **shall file** a release of lien in accordance with NMSA 1978, § 48-8-5.

**IT IS FURTHER ORDERED** that Claimant Turner and Associates, P.A. **shall recover** from the funds in the Court's registry the sum of **$9,776.00**.

**So ordered this 3rd day of December, 2015.**

_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE